IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR SOLANO, | No. 2:15-cv-1296-CMK-P |
| Plaintiff, | |
| vs. | ORDER |
| NESTHOR LUCCA, | |
| Defendant. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court is defendants' motion to dismiss (Doc. 22). Plaintiff filed an opposition to the motion (Doc. 23); defendants filed a reply (Doc. 24). In addition, plaintiff has filed two motions to amend his complaint (Docs. 16, 19), and defendants have filed a motion to stay discovery (Doc. 25).

/ / /

/ / /

/ / /

## I. BACKGROUND

Plaintiff brings this action for use of excessive force in violation of the Eighth Amendment. Originally filed in June 2015, after being served the defendant filed a motion to dismiss. In response, plaintiff filed a motion to amend (Doc. 16) and his first amended complaint (Doc. 15). Federal Rule of Civil Procedure 15(a)(1) provides that a party may amend his pleading once as a matter of right within 21 days after serving it, or within 21 days of a responsive pleading or motion under Rule 12(b), (e), or (f). Here, plaintiff filed his amended complaint within the time provided by Rule 15(a), thus a motion to amend was unnecessary and will be denied as such. Plaintiff then filed a duplicative motion to amend (Doc. 19) and amended complaint (Doc. 20). It is unclear to the court whether this was in error or whether these documents somehow ended up being filed twice by accident. Either way, the second motion to amend and second amended complaint are duplicative, and will be denied as such. The operative complaint in this action is plaintiff's first amended complaint (Doc. 15). As defendant's original motion to dismiss was aimed at the original complaint, upon the filing of the first amended complaint, defendant withdrew the motion to dismiss (Doc. 14). Thereafter, and in response to plaintiff's amended complaint, defendant filed a new motion to dismiss (Doc. 22), which is now pending.

In addition, given the pending motion to dismiss, defendant filed a motion to stay discovery (Doc. 25) until resolution of the motion to dismiss. Plaintiff filed a notice of non-opposition to that motion. As no answer has been filed, and no scheduling order issued, the motion to stay discovery will therefore be granted. A scheduling order addressing discovery deadlines will be issued after an answer to the complaint is filed.

This action proceeds on the first amended complaint. Therein, plaintiff alleges that defendant Lucca used unnecessary and excessive force maliciously against him. He contends that he was placed in a holding cage wherein he was required to undergo an unclothed body search by the defendant. After the search was complete, he was given a pair of boxers to

wear. At that time, plaintiff was suicidal and informed defendant Lucca that he wanted to kill himself. As a result, defendant placed him in restraints and required a urinalysis. Defendant Lucca handled him aggressively and was verbally abusive to him. Plaintiff attempted to provide urine for the test, but was unable out of fear and his suicidal thoughts. Defendant Lucca became irate and stated, "watch motherfucker, your gonna get yours," intimating plaintiff's safety was in jeopardy. Defendant Lucca was aggressive while placing plaintiff back in the holding cage. Defendant Lucca then escorted plaintiff to suicide watch, with plaintiff in restraints. During the escort to suicide watch, defendant Lucca sprayed plaintiff with pepper spray on the back, arm and buttock areas. Defendant Lucca laughed, and stated, "I told you so." The pepper spray made plaintiff's torso, boxers, arm and buttocks dripping wet, and covered his anus which resulted in extreme pain while defecating for three days. Defendant Lucca took plaintiff to the medical clinic for decontamination. Because defendant Lucca was present, plaintiff was fearful of telling medical what actually happened, so Lucca reported he accidently pepper sprayed plaintiff which resulted in the incident being reported as an unusual occurrence instead of use of force.

## II. MOTION TO DISMISS

Defendant brings this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Specifically, defendant contends the first amended complaint fails to state a claim for use of excessive force as it is clear from the facts alleged and the attachment to the complaint that the discharge of the pepper spray was accidental and therefore cannot be the basis for use of excessive force claim. In addition, defendant claims he is entitled to qualified immunity as the discharge of pepper spray was accidental.

Rule 12(b)(6) provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp.

Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  Legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 662, 544, 555-57 (2007).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

4

801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

The undersigned agrees with defendant's contention that an accidental use of force does not suffice for an Eighth Amendment violation. See Wilson v. Seiter, 501 U.S. 294, 300 (1991). However, reading the complaint in the light most favorable to plaintiff, as the court

5

must, plaintiff alleges the actions of the defendant were not accidental but malicious and done with the intent to harm or punish plaintiff. While the medical report does indicate the application of the pepper spray was done accidentally, and the notes indicate that is was as plaintiff reported, the complaint explains plaintiff did not state the spraying was accidental. Instead, plaintiff alleges that he was fearful of reporting what happened so he stayed silent, that it was actually defendant Lucca who informed the nurse that it was an accidental spray. In addition, plaintiff alleges in the complaint that defendant Lucca sprayed him with the pepper spray in direct response to plaintiff being unable to provide a urine test and plaintiff's suicidal statement.

The truth of the allegations is not weighed in resolving a motion to dismiss. See Erickson, 551 U.S. at 93-94. Rather, the alleged facts are taken as true so long as they are reasonably plausible. Here, it is reasonably plausible that the defendant intentionally sprayed plaintiff with the pepper spray. There is nothing in the complaint, even considering the medical notes attached thereto, which concedes the spraying was accidental. Accordingly, the motion to dismiss for failure to state a claim must be denied.

Next, defendant contends he is entitled to qualified immunity as well as Eleveth Amendment immunity. To the extent plaintiff argues he is suing defendant Lucca in his official capacity for damages, the undersigned agrees with the defendant that the Eleventh Amendment would protect him from such a suit. The Eleventh Amendment bars actions seeking damages from state officials acting in their official capacities. See Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam).

As to the defendant's claim for qualified immunity in his individual capacity, such a claim is based on the same interpretation of facts discussed above, namely that the incident was an accident. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have "reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

///

1       The first factors in the qualified immunity analysis involve purely legal questions.
2  See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal
3  determination based on a prior factual finding as to the reasonableness of the government
4  official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court
5  has discretion to determine which of the Saucier factors to analyze first.  See Pearson v.
6  Callahan, 555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence
7  in the light most favorable to plaintiff and resolve all material factual disputes in favor of
8  plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).
9       Again, the undersigned agrees with defendant's contention that qualified
10 immunity applies as protection from suit for good faith misjudgments and mistakes.  See Jackson,
11 268 F.3d at 651, Saucier, 533 U.S. at 205.  However, defendant's contention that the incident
12 was accidental, as discussed above, is not conceded in the complaint and a reasonable reading of
13 the complaint is that the action was not accidental but deliberate and done with the intention to
14 harm or punish plaintiff.  As such, the undersigned cannot find qualified immunity protects
15 defendant from this action at this time.  Taking the facts alleged as true, and viewing them in the
16 light most favorable to plaintiff, an intentional application of pepper spray, done with the intent
17 to harm a prisoner, could be a violation of the prisoner's Eighth Amendment rights.  The right at
18 issue in this case, the right to be free from intentional use of excessive force, is clearly
19 established.  Thus, the undersigned finds application of qualified immunity does not apply at this
20 time.

### III.   CONCLUSION

22      Based on the foregoing discussion, the undersigned finds the complaint, read
23 liberally, sufficiently states a claim against the defendant for violation of the Eighth Amendment.
24 The undersigned further finds qualified immunity does not apply to protect the defendant from
25 this action at this time.
26 / / /

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to amend (Doc. 16) is denied as unnecessary;
2. Plaintiff's motion to amend (Doc. 19) is denied as duplicative;
3. Defendant's motion to stay discovery (Doc. 25) is granted;
4. Defendant's motion to dismiss (Doc. 22) is denied; and
5. Defendant shall file a response to the complaint within 30 days of the date of this order.

DATED: March 27, 2017

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE